JAMES BENNETT *vs.* VALENTINE BLATZ, impleaded, etc.

July 11, 1890.

**Taxes—Delinquent List—Defect in Verification.**—No defect in the verification of the tax-list filed with the clerk of the court affects the jurisdiction of the court over the proceedings. Following *County of Mille Lacs* v. *Morrison*, 22 Minn. 178.

**Same—Proof of Publication, When to be Made.**—Publication of the list and notice, being essential to the jurisdiction of the court, must affirmatively appear; but, as it is the *fact*, and not the proof, of publication which confers jurisdiction, this proof may be supplied at any time, even after judgment.

**Same—Proof held Insufficient.**—The proof of publication in this case *held* insufficient.

**Same—Original Notice—Filing.**—It is not necessary that the original of the notice attached by the clerk of the court to the copy of the tax-list delivered by him to the county auditor should be kept on file in his office.

**Same—Two Certificates of Same Sale not Inconsistent.**—The fact that two certificates of sale have been issued by the county auditor,—one to the effect that he had sold a single tract for a certain sum, and the other to the effect that at the same sale he had sold to the same purchaser six separate tracts, including the one named in the first certificate, for a certain other and larger sum,—will not destroy the effect of the first-named certificate as *prima facie* evidence of the facts stated in it. The two certificates are not necessarily inconsistent, although presumptively the language of the latter certificate would imply that all six tracts had been sold together for a gross sum.

Action brought in the district court for Hennepin county, to determine the adverse claims of the defendants to lot 9, in block 8, in Lennon & Newell's addition to St. Anthony. At the trial before *Rea*, J., the plaintiff relied on a title, through mesne conveyances, from the patentee of the United States; the defendant Blatz on the tax-title stated in the opinion, and on deeds from Clapp and Haskins (plaintiff's remote grantors) to H. T. Welles, and from Welles to himself. Lennon, the original patentee, conveyed the lot in dispute, with others, to Clapp and Haskins, by deed dated and recorded July

21, 1857; Clapp conveyed the lot in dispute, with other property, to his cotenant Haskins, by quitclaim deed dated and recorded September 11, 1857; and on February 4, 1889, Haskins conveyed to plaintiff. On December 6, 1858, Haskins and Clapp conveyed to Welles the government subdivision in which the lot in dispute is situate, "excepting and reserving all those lots and blocks in Lennon & Newell's addition to the city of St. Anthony that were conveyed to the said Haskins & Clapp by warranty deed dated the 21st day of July, 1857, made and executed by James A. Lennon, which said deed was filed in the office of the register of deeds for said county of Hennepin on the 22d day of July, 1857." The court sustained the tax-title and ordered judgment for defendant Blatz, which was entered, and the plaintiff appealed.

*S. & O. Kipp,* for appellant.

*F. B. Wright,* for respondent.

MITCHELL, J. 1. According to the maxim that that is certain which can be rendered certain, the exception in the deed from Haskins & Clapp to Welles is good. The patent title of the premises is therefore in plaintiff; and, if defendant succeeds, it must be on his tax-title. This title was acquired by sale under a judgment for the taxes of 1879 and prior years, pursuant to Laws 1881, *c.* 135. The forfeited list was, as provided by section 1 of this act, appended to the delinquent list of 1881 for taxes of 1880. The delinquent list filed with the clerk of the court was not, but the forfeited list was, verified by the oath of the county auditor, as required by Gen. St. 1878, *c.* 11, § 70. This omission as to the delinquent list could not affect the forfeited list; but, aside from this, it is settled that no defect in the verification of the list filed with the clerk affects the jurisdiction of the court over the proceedings. *County of Mille Lacs .v. Morrison,* 22 Minn. 178.

2. The printer's affidavit of publication is "that the printed delinquent-tax list * * * for the year 1880, and of taxes which became delinquent in 1879 and prior years, hereto attached, cut from the columns of said newspaper, [the Hennepin County Mirror,] was inserted, printed, and published in said newspaper once in each week for two successive weeks; that said notice was first inserted,

printed, and published in said newspaper on Saturday, the 9th day of July, 1881, and Saturday, the 16th day of July, 1881; and that said newspaper was regularly issued on Saturday of each week during all the time aforesaid." This affidavit is pasted on the inside of the front cover of a book on file in the office of the clerk of the court, but there is no tax-list cut from the columns of any newspaper "attached" to this affidavit, or contained anywhere in the book; nor is there any tax-list of any kind "attached" to the affidavit or contained in said book, except as hereinafter stated. The book contains three whole numbers of the Hennepin County Mirror, dated July 9, 1881, and also three whole numbers of the same paper dated July 16, 1881. Each of these papers contains a printed copy of the delinquent list of 1881 for the taxes of 1880, also of the forfeited list for the taxes of 1879 and prior years; each list being preceded by a printed notice in the form prescribed by section 71 of the tax law. Intervening between the front cover of the book, on which the printer's affidavit is pasted, and these six numbers of the newspaper, are two white blank fly-leaves. Pasted on the inside of the back cover of the book is a certified copy of the resolution of the county commissioners designating the Hennepin County Mirror as the newspaper in which the delinquent list for taxes of 1880 should be published. The covers of the book are ordinary pasteboard covers the full size of the newspaper. Nowhere on the book or any of its contents is there any indorsement to indicate when the book, or the printer's affidavit, or any of the other contents of the book, was filed in the office of the clerk of the court. The foregoing is a description of the entire contents of the book, and constitutes all the evidence tending to prove the publication of the tax-list and notice upon which the judgment was rendered on which the tax-sale was made under which defendant claims title.

Publication of the list and notice, being essential to the jurisdiction of the court to render judgment, must be made to affirmatively appear. The "book" referred to is evidently the judgment-roll, if we may so term it, which the clerk of the court is required by section 99 of the tax law to make up by attaching together and keeping on file the papers, etc., enumerated in the section referred to. From the

facts stated, no inference can be drawn, or presumption indulged in, that, when the printer's affidavit was made, any of the copies of the newspaper now found in the book were in any way attached to or connected with it.    Indeed, the express language of the affidavit negatives any such inference or presumption.    It refers to a list cut out, or to be cut out, of the newspaper.    Presumptively, all the papers or documents now found bound or attached together in the book were, when filed in the clerk's office, separate from each other, and were afterwards thus attached together by the clerk in performance of the duty imposed on him by section 99.    The affidavit, by itself, is clearly insufficient; and we can see no allowable ground upon which it can be assumed that these copies of the newspaper now found in the book were attached to or a part of the affidavit when made, or are the lists referred to in it.    In other words, neither the affidavit nor the newspaper is by itself sufficient proof of publication, and there is nothing to justify treating them as one, or as parts of each other so that one may supply what the other lacks.    There was, therefore, no sufficient proof of the publication of the list and notice.

However, it is the fact, and not the proof, of publication which gives the court jurisdiction.    Therefore, if the proof of publication first filed is defective, the want of it may at any time be supplied. *Kipp* v. *Fullerton*, 4 Minn. 366, (473;) *County of Mille Lacs* v. *Morrison, supra; Frisk* v. *Reigelman,* 75 Wis. 499, (43 N. W. Rep. 1117.) We can see no reason why this may not be done after as well as before judgment.    Whether this proof might be made in a collateral action, the record in the tax proceedings remaining defective in that regard, or whether the lacking proof should be first supplied in the latter on leave of the court, is a question not now necessary to consider.    The latter, if not the exclusive, is at least the safer and better, course.

3. The point is made that the tax judgment is void because what plaintiff calls "the original notice issued by the clerk of the court" is not on file in his office.    There is nothing in this point.    By section 71 of the tax law the clerk is required to attach this notice to the copy of the list which he delivers to the auditor for publication.    There is nothing requiring him to keep the original of this notice in his office.

A summons or other notice amounts to nothing until served, and the important thing is what was served, which in these proceedings is made by publication. The object of section 99 is to preserve a judgment-roll as in ordinary civil actions; and, as in such actions, a copy of the notice is sufficient if accompanied by proper proof of its service by publication.

4. Upon the trial the defendant introduced in evidence a certificate of sale from the auditor, dated September 27, 1881, and recorded June 25, 1884, certifying that he had sold to defendant's grantor the lot or tract in dispute for one dollar. The plaintiff then introduced another certificate of the same date, and recorded May 31, 1883, by which the same auditor certified that he had sold some six different and distinct lots or parcels, including the lot in question, for the sum of $22.22. Presumptively, the language of the latter certificate would imply that all six lots had been sold together as one tract for a gross sum, which would, under our decisions, render the sale void. But the two certificates are not necessarily inconsistent. It is a matter of common knowledge that, even when each tract was sold separately, it was not infrequent for the auditor to include all tracts sold to the same purchaser in one certificate, stating merely the aggregate sum for which all were sold. When this is inadvertently done, there is nothing to prevent the same auditor, within a reasonable time, from issuing a proper certificate in accordance with the facts. While the existence of the two certificates might suggest inquiry as to what were the actual facts, yet this alone is not enough to overcome the effect of a certificate as *prima facie* evidence of the truth of the facts stated or recited in it. But for the want of proof of publication of the list and notice, the judgment appealed from must be reversed.