(75 N. W. Rep. 779.)

---

CASS COUNTY, N. D. *vs.* THE SECURITY IMPROVEMENT CO., *et al.*

Opinion filed May 27th, 1898.

**Delinquent Tax List—Publication—Designation of Newspaper by Improper Name.**

Construing chapter 67, Laws 1897. Before the tax list and notice were published, the county auditor filed with the Clerk of the District Court a certified copy of a certain action taken by the county commissioners of Cass County, as follows: "This is to certify that at a meeting of the county commissioners held in the court house, March 3rd, 1897, the following proceedings were had, as appears on record, page 260: Bids for the printing of the delinquent tax list, according to House Bill No. 42 of 1897, were opened. The Fargo Argus offered to print them for 15 cents per description, and the Fargo Forum offered to print said list for 12 cents per description. On motion the bid of the Forum was accepted, and the bond required to be given was filed in the sum of $1,000, subject to the approval of the county commissioners. Further, it appears from the said commissioners' record of date March 6th, 1897, on page 266, the following: "The Fargo Forum presented the bond for publication of the delinquent tax list in the sum of one thousand dollars. On motion said bond was approved and filed, all members voting aye. Witness my hand and official seal, this 28th day of June, 1897." It appearing that no newspaper was published in Cass County at that time named the Fargo Forum, and further appearing at that time two newspapers were published at Fargo, in said county, one named the Fargo Forum and Weekly Republican, and one named the Fargo Forum and Daily Republican, *held*, following *Russell* v. *Gilson*, 31 N. W. Rep. 692, 36 Minn. 366, that the board by its said action did not designate a newspaper in which the tax list should be published, and

said action did not, therefore, authorize the publication of such list in any newspaper whatever.

### Filing Certified Copy of Resolution with the Clerk of Court.

It appears that on the 6th day of March, 1897, the board of county commissioners, by a separate resolution, duly adopted, did specifically designate the Fargo Forum and Daily Republican (a newspaper published at Fargo) as the newspaper in which the tax list in question should be published. A copy of such resolutions, duly certified by the county auditor, was filed in the office of the Clerk of the District Court; but such filing did not occur until the publication of the list in said newspaper had been completed. *Held,* that the omission to file the certified copy with the Clerk of the District Court before the fact of publication was fatal, and the court acquired no jurisdiction to proceed, following *Merriman* v. *Knight,* 45 N. W. Rep. 1098, 43 Minn. 493. "The filing of a certified copy of the resolution with the Clerk of the Court is just as imperatively required by the statute as is the adoption of the resolution itself. Both are equally prerequisites to the publication of the list." *Id. Held,* further, that this is a proper case for the application of the general rule that where a statute is taken from another state, and adopted without change, the same is taken with the construction placed upon it by the court of last resort of the state from whence the statute came. *Held,* further, under section 1 of said statute, the tax list need not embrace a separate statement of the penalty and interest. These should be stated in one lump sum with the original tax.

Certified questions from District Court, Cass County; *Pollock,* J,

Action by Cass County against certain lands of the Security Improvement Company, Matilda M. Roberts, Mary M. Fisher, C. W. Darling and others, to enforce the payment of taxes delinquent in and prior to the year 1895. Upon petition of defendants the questions mentioned in the opinion were certified to the Supreme Court pursuant to section 10, chapter 67, Laws 1897.

*J. E. Robinson,* for petitioners.

Section 4, chapter 67, Laws 1897 is a copy of the Minnesota statute upon the same subject. Section 1581, Stat. of Minn. This statute has been construed. *Merriam* v. *Knight,* 43 Minn. 493, 45 N. W. Rep. 1098. A tax judgment is void unless the paper in which the delinquent tax list shall be published is designated as required by law and unless a certified copy of the resolution designating the newspaper is filed in the office of the

Clerk of Court before the publication of the tax list. *Banning* v. *McManus*, 51 Minn. 289, 53 N. W. Rep. 635; *Russell* v. *Gilson*, 36 Minn. 367, 31 N. W. Rep. 692. Defendants properly raised these questions by special appearance and a motion to dismiss. *Houston County* v. *Jessup*, 22 Minn. 552.

*Fred B. Morrill, State's Atty.*, for respondent.

The statute of this state differs from that of Minnesota in this it is here provided that "no omission of anything required by an officer or officers to be done prior to the filing of the list with the clerk shall be a defense or objection to the taxes appearing on any piece or parcel of land unless it be made to appear to the court that such omission resulted to the prejudice of the party objecting." Section 9, Ch. 67, Laws 1897; *Russell* v. *Gilson*, 36 Minn. 367, has been modified. *Fairchild* v. *City of St. Paul*, 46 Minn. 540, 49 N. W. Rep. 327.

WALLIN, J. In this action, which arises under chapter 67 of the Laws of 1897, the District Court, Hon. Charles A. Pollock presiding, has made a statement of facts and propounded certain questions thereon to this court, pursuant to section 10 of said chapter. The questions certified to this court are as follows: "(1) Was it necessary to the jurisdiction of the court that a certified copy of a resolution of the county commissioners designating a newspaper for the publication of the delinquent tax list should be filed in the office of the Clerk of the District Court prior to the filing or prior to the publication of such tax list, and, if so, then was the resolution, a copy of which is hereto annexed as 'Exhibit A,' a sufficient compliance with the statutes? (2) Should the tax list, as filed, and as published, contain a discription of each piece of land, and opposite such description the amount of the tax in one column, and in a separate column the amount of the interest and penalty? In other words, should the tax be stated in one column and the interest and penalty in another column, or so stated as to show the amount of the tax and the amount of the interest and penalty for each year?" As explanatory of these

questions, a statement of facts as found in the record becomes necessary. On March 4, 1897, at a meeting of the county commissioners of Cass County, certain newspapers, viz. the Fargo Argus and the Fargo Forum, respectively, made bids for the publication of the delinquent tax list of lands becoming delinquent in Cass County in 1895 and prior years. The record shows that the bid of the Fargo Forum was accepted by the board, and that newspaper was directed to furnish a bond in the sum of $1,000 for the faithful publication of the list. Later, and on March 6, 1897, the bond of the Fargo Forum was approved by the board. It further appears that on March 6, 1897, the county board, in due form, and by a separate resolution, designated the Fargo Forum and Daily Republican as the newspaper in which the said tax list and notice should be published. It likewise appears that said last named newspaper is a daily newspaper published at Fargo, in Cass County, and that another newspaper, named the Fargo Forum and Weekly Republican, is a weekly paper, also published at the same place. The action taken by the county board on March 3d and 6th, respectively, viz. the acts of accepting the bid of the Fargo Forum, and approving its bond, are evidenced by resolutions entered in the official record of the proceedings of the board, and dated March 3d and 6th, respectively. A certified copy of the record of said proceedings, made by the county auditor, and dated on June 28, 1897, was filed in the office of the Clerk of the District Court on June 28, 1897. It further appears that said separate resolution of March 6th, 1897, which formally designated the Fargo Forum and Daily Republican as the newspaper in which said tax list and notice should be published, was copied and certified to in due form by the county auditor of Cass County on August 28, 1897, and on the same day said certified copy was filed with the Clerk of the District Court for Cass County. The notice and list was actually published in the Fargo Forum and Daily Republican three times in the month of July, 1897, and due proof thereof appears in the record. The delinquent tax list was filed by the county treasurer with the

Clerk of the District Court on July 1st, 1897. It further appears that the tax list as published embraces a description of the several parcels of land in question, and opposite each description there is for each year an amount stated in dollars and cents in one lump sum. The list does not contain a separate statement of either interest or penalty.

Answering the questions propounded by the District Court in their inverse order, we find little difficulty in reaching the conclusion that said statute does not require, either expressly or by any fair implication from its language, that a statement of the interest and penalty which go to swell the aggregate amount of the tax published in the list shall be separately stated. We think section 1 of the act is substantially complied with if the amount of the tax for each year, including penalty and interest, is stated in the aggregate. If the landowner has any defense or objection to the total tax appearing on the list, he is permitted, under section 5 of the statute, to set out the same by answer. Upon an issue thus formed the court would be authorized to investigate all questions touching the legality of any interest or penalty or costs which may have entered into the total tax appearing on the published list. The fact should not be overlooked that the judicial proceeding authorized by this statute is not a proceeding to set aside or establish a tax title, nor to assess or levy a tax. Its sole purpose is to obtain a judgment for an alleged existing delinquent tax, and in doing so, the taxpayer is given his day in a court of competent jurisdiction, and is unrestricted with respect to any objection or defense which he may desire to urge against the validity of the tax, subject only to the limitations contained in section 9 of the act. The list as published is only *prima facie* evidence. *Id.*

The first question propounded by the District Court is one directly involving the jurisdiction of that court to proceed to enter judgment against the lands described in the published list, and is, therefore, of a very serious nature. The proceeding is strictly *in rem*. It is true, the District Court does not lay hold

of the land by its process. It obtains jurisdiction over the land not by the service of a summons on its owner, but by means of statutory instrumentalities including, in addition to the action of the county commissioners, a published notice which embraces a description of the land against which the county proposes to take a judgment for the delinquent tax thereon. The steps whereby the lands are subjected to the jurisdiction of the court are clearly laid down in the statute, and are as follows: (1) A verified tax list embracing certain specified lands is required to be filed with the Clerk of the District Court by the county treasurer of each county. Such list is made to do duty as a complaint in an action by the county against each tract of land described in the list. This list is not required to be filed with the Clerk of the District Court until 10 days have elapsed after the county board shall have by resolution designated the newspaper in which said list is required to be published. Section 4. (2) Section 4 embraces the following provisions: "The newspaper in which such publication shall be made shall be designated by a resolution of the board of county commissioners of the county in which the taxes are laid, at least ten days before the filing of such list; a copy of which resolution, certified by the county auditor, shall be filed in the office of the Clerk of the District Court." In the case at bar it appears that the list was filed by the treasurer with the Clerk of the District Court on July 1, 1897, and that a newspaper in which such list was to be published had been expressly and formally designated by the county commissioners long prior thereto, to-wit, on March 6, 1897. The fundamental defect in the proceeding, if any there is, consists in the fact that the clerk of the District Court was not officially apprised of the action of the commissioners whereby the newspaper was designated, until after the publication was completed, and not until August 28, 1897. The list itself was officially published for the prescribed period of time, and was so published in the newspaper which had been designated for that purpose by the commissioners. Reverting to the action of the county board in the premises, it appears that

all of said action occurred on the 3d and 6th days of March 1897. The action of the board is all evidenced by a record entered in the record book of its proceedings. It appears that the county auditor made two certified copies of the record of such proceedings. One of them was made and filed with the Clerk of the District Court on June 28, 1897. It is found in this record as Exhibit A, and is as follows: "This is to certify that at a meeting of the county commissioners held in the court house March 3rd, 1897, the following proceedings were had, as appears of record, page 260: Bids for the printing of the delinquent tax list, according to house bill No. 42 of 1897, were opened. The Fargo Argus offered to print them for 15 cents per description, and the Fargo Forum offered to print said list for 12 cents per description. On motion the bid of the Forum was accepted, and the bond required to be given was filed in the sum of $1,000, subject to the approval of the county commissioners. Further, it appears from the said commissioners' record of date March 6, 1897, on page 266, the following: The Fargo Forum presented the bond for publication of the delinquent tax list in the sum of one thousand dollars. On motion said bond was approved and filed, all members voting aye. Witness my hand and official seal, this 28th day of June, 1897. O. J. Olson, County Auditor. [Official Seal."] "Filed in the office of the Clerk of the District Court, June 28th, 1897." The other certified copy, known in the record as "Exhibit B," was made and filed with the Clerk of the Court on August 28, 1897, and is as follows: "The bid of the Fargo Forum and Daily Republican for the publication of the delinquent tax list having been accepted by the board, and good and sufficient bond having been filed: Now, therefore, be it resolved, that the Fargo Forum and Daily Republican be, and the same is hereby, designated as the newspaper in which the notice and delinquent tax list shall be published in Cass County, North Dakota, as required by house bill No. 42, approved July 20, 1897, being an act to enforce the payment of taxes which became delinquent in and prior to the year 1895; said Fargo Forum and Daily Republican being a

newspaper published in Cass County, North Dakota. [Signed] W. G. Newton, Chair. Attest: O. J. Olson, County Auditor. [Official Seal."] "I hereby certify that the foregoing is a correct copy of the resolution adopted by the county commissioners designating the Fargo Forum and Daily Republican as the newspaper in which to publish the delinquent tax list, which resolution is now on file in the office of the county auditor. Dated August 28th, 1897. [Signed] O. J. Olson." Indorsed as follows: "Filed in the office of the Clerk of District Court, Cass County, N. D., August 28, 1897. E. M. Patton, Clerk, by W. A. Brown, Deputy."

Considering the action of the board with respect to the list as a whole, it is apparent from our standpoint that the board did not, by its action as embodied in Exhibit A, intend to designate any particular newspaper as that in which the list should be published. In that action it accepted the bid, and approved the bond of the Fargo Forum. It appears that the words "Fargo Forum" constitute a part of the descriptive name applied indiscriminately to two newspapers published at Fargo, viz. the Fargo Forum and Weekly Republican and the Fargo Forum and Daily Republican. Neither of said newspapers were referred to expressly in the action of the board embraced in Exhibit A, nor was the Fargo Forum in terms designated as the paper which should publish the list. In fact, there is, strictly speaking, no newspaper published at Fargo which bears the name of Fargo Forum. But if the board had intended—as it clearly did not do —to designate the paper by its action, evidenced by Exhibit A, in which the tax list should be published, it failed to do so, in that it made reference to two newspapers then published at Fargo, without pointing out which of the two papers should publish the list. The statute governing this proceeding is taken literally from the laws of Minnesota, and the point we are here discussing was expressly passed upon by the Supreme Court of that state in *Russell* v. *Gilson*, 36 Minn. 366, 31 N. W. Rep. 692. In that case the board designated the Minneapolis Tribune as the

paper to publish the list. In the headnote to the case the court say: "The Minneapolis Tribune Company published two newspapers one called the Minneapolis Daily Tribune and the other the Minneapolis Weekly Tribune. The county board designated the Minneapolis Tribune as the paper in which the delinquent list and notice should be published. The publication was made in the Minneapolis Weekly Tribune. Held, that there was no sufficient designation of the newspaper, and no legal publication of the list and notice." This case is authority which is decisive of the point. Exhibit A did no embrace any action whereby a newspaper was designated by the commissioners, and hence its filing with the Clerk of the Court was not notice of any designation. Exhibit B, as certified by the auditor, embraces action whereby the commissioners did designate a newspaper in which the list should be published, viz. the Fargo Forum and Daily Republican. This exhibit did not reach the office of the Clerk of the District Court until long after the tax list had been published. The contention of defendant's counsel is that it was filed too late, and consequently that the tax was publised by the clerk without authority of law. This point has also been expressly ruled by the court of last resort in the state from which the statute originally came. In *Merriman* v. *Knight*, 43 Minn. 493, 45 N. W. Rep. 1098, the court in an opinion formulated by Judge Mitchell, says: "Gen. St. 1878, chapter 11, section 72, [Gen. St. 1894, section 1581,] provides that the newspaper in which the publication of the delinquent tax list shall be made 'shall be designated by resolution of the board of county commissioners, * * * a copy of which resolution, certified by the county auditor, shall be filed in the office of the Clerk of the Court.' In *Eastman* v. *Linn*, 26 Minn. 215, 2 N. W. Rep. 693, it was held that 'the publication operates as a constructive service of the notice and list upon the party whose property is to be affected by the proceeding, and, to be effectual for any purpose, the mode of making it pointed out by the statute must be strictly complied with.' This was followed in *Russell* v. *Gilson*, 36 Minn.

366, 31 N. W. Rep. 692, in which it was also said that the purpose of the resolution designating the paper is not merely to direct how the notice and list should be served, but was intended as notice to the taxpayer, so that by examining it he might be able to ascertain with certainty in what newspaper to look in order to see whether any proceedings had been commenced against his land. In both these cases the board had failed to pass any resolution properly designating the paper. In the present case a proper resolution had been passed by the board, but no copy of it was filed in the office of the Clerk of the Court, as required by the statute. But we can see no distinction in principle between the cases. The filing of a certified copy of the resolution with the Clerk of the Court is just as imperatively required by the statute as is the adoption of the resolution itself. Both are equally prerequisites to the publication of the list, and the one can no more be dispensed with or disregarded than the other. Both are designed, in part at least, for the benefit of the taxpayer by giving him notice of what paper he shall look to to see whether proceedings have been commenced against his land. It is no answer to this to say that he may get this information by searching for the resolution in the records of the proceedings of the board as kept by their clerk. The statute requires it to be filed with the Clerk of the Court, and the taxpayer has a right to look there for it." The reasoning of the court in the cases cited appears to us to be intrinsically sound, and in harmony with the strict rule of construction governing in cases where a statutory or substituted service is provided in lieu of the personal service of a notice upon the defendant of the pendency of the action. We think, too, that this case is one in which the general rule should be applied that a statute taken from another state is adopted together with the construction put upon it by the court of last resort in the state from whence it came.

The state's attorney cites section 9 of chapter 67, and makes the point that, inasmuch as the defendant has failed to show that the omission to file a copy of the resolution of the board with the

clerk has operated to his prejudice, under the provisions of said section the defendant cannot avail himself of such omission as a ground for an attack upon the jurisdiction of the court to proceed to enter judgment for the taxes. We think the citation is not in point. The omissions of officers referred to in that section are declared not to be a defense or objection to the taxes appearing on the list, and the language has reference merely to the validity or invalidity of such taxes as appear upon the list returned by the county treasurer. That section does not attempt to deal with the question of the jurisdiction of the District Court to consider and decide upon the question of the legality of taxes returned as delinquent. Other provisions of the statute to which we have referred regulate the matter of jurisdiction, and point out the only mode by which the District Court may acquire the right to proceed against the land. Our conclusion is that the District Court in this case never acquired jurisdiction to enter a judgment against the lands of the defendant. The publication actually made was inoperative because of the failure to file a certified copy of the resolution with the clerk at any time prior to the act of publication.

The proper order will be entered, and certified to the court below. All the judges concurring.